IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ROGER M. SERAFIN,

          Plaintiff,

v.                                    CIV 13-0347 CLH/KBM

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

          Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

Pursuant to 28 U.S.C. § 636(b), this matter has been referred to me for a recommended disposition.  *Doc. 7.*  Having carefully reviewed the parties' positions and the material portions of the record, the Court recommends that Plaintiff's motion to remand be granted.

**I.      Procedural History**

Plaintiff filed an initial application with the Social Security Administration for Title II benefits under the Social Security Act on August 13, 2009, with an alleged onset of disability beginning on August 10, 2009, from an above-the-knee left leg amputation and residual effects of a broken left humerus.  *AR* at 125-26, 156, 185.[1]  Plaintiff, who was 39-years old on his alleged disability onset date, has a tenth grade education and past relevant work as an Assistant Sales Manager for a car dealership.  *Id.* at 30.  Plaintiff's

---

[1] Documents 14-1 through 14-13 comprise the sealed Administrative Record ("*AR*").  The Court cites the Record's internal pagination, rather than the CM/ECF document number and page.

disability claim was denied initially on April 28, 2010, and upon reconsideration on June 9, 2010.  *Id.* at 75, 80.

Administrative Law Judge Ann Farris ("the ALJ") held a *de novo* hearing on October 13, 2011, at which a vocational expert testified and non-attorney John Bishop represented Plaintiff.  *Id.* at 35-70.  On January 5, 2012, the ALJ issued her Decision, determining that Plaintiff was not disabled.  *Id.* at 24-30.  Plaintiff submitted a Request for Review of the ALJ's Decision to the Appeals Council; however, the Council declined this request on February 8, 2013.  *Id.* at 1-6.  As such, the ALJ's Decision became the final decision of the Commissioner*.  Doyal v. Barnhart*, 331 F.3d 758, 459 (10th Cir. 2003).

A claimant seeking disability benefits must establish that she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505(a).  The Commissioner is required to use a five-step sequential evaluation process to determine eligibility for benefits.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4).

Here, at Step One of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant time period.  *AR* at 26.  At Step Two, the ALJ determined that Plaintiff had the severe impairments of status post above the knee amputation and status post open reduction internal fixation (OFIF) of the left humerus.  *Id.*  In contrast, the ALJ concluded that Plaintiff's gastroesophageal reflux disease and anemia were not severe in nature.  *Id.*  At Step

Three, the ALJ concluded that Plaintiff's impairments did not meet or medically equal the regulatory "listings." *Id.* At Step Four, she assessed Plaintiff's residual functional capacity ("RFC"), finding an RFC that allowed Plaintiff to perform sedentary work with certain physical limitations. *Id.* at 27. The ALJ determined that Plaintiff could perform his past relevant work as an Assistant Sales Manager. *Id.* at 30. As a result of her finding that Plaintiff was not disabled at Step Four, the ALJ did not proceed to Step Five of the sequential evaluation. *Id.*

Plaintiff alleges that the ALJ erred in four ways: 1) by making Plaintiff's RFC without consideration of the specific functions of work and without consideration of whether Plaintiff would be able to sustain activity, 2) by finding that Plaintiff could return to past work, 3) by failing to develop the record, and 4) by relying on the already-determined RFC finding in determining credibility. *Doc. 17* at 4. Because the Court concludes that remand is warranted based upon the ALJ's inadequate performance of the *Winfrey* analysis – both as to the RFC determination and the finding that Plaintiff could return to his prior relevant work – it need not consider Plaintiff's additional assertions of error.

## II.    Legal Standard

The general inquiry is whether the ALJ applied the correct legal standards and whether his decision is supported by substantial evidence. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). A deficiency in either area is grounds for remand. *Id.* Substantial evidence is more than a "mere scintilla." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* The Court may not

reweigh the evidence, substituting its own discretion for that of the Commissioner.  *See Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994).

**III.    Analysis**

An ALJ must engage in a three-pronged analysis before determining, at Step Four, that a claimant can return to his past work.  *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996).  First, she must evaluate his RFC, both physical and mental.  *Id.* at 1017. Second, she must determine the physical and mental demands of the past work.  *Id.* Finally, she must decide whether the claimant can meet the demands of the past work in spite of his RFC limitations.  *Id.*  Plaintiff contends that the ALJ erred at each prong of the *Winfrey* analysis.

First, Plaintiff insists that the ALJ's RFC determination was "structurally flawed because it did not provide a function-by-function analysis."  *Doc. 17* at 13.  According to Social Security Ruling 96-8p, when assessing a person's RFC, an ALJ "must first identify [his] functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis," including his physical and mental abilities. SSR 96-8p, 1996 WL 374184 (referencing 20 C.F.R. 404.1545).  Ruling 96-8p further provides that the ALJ must consider a claimant's "seven strength demands," which include sitting, standing, walking lifting, carrying, pushing, and pulling.  *Id.* at *5.  The Ruling directs that "[e]ach function must be considered separately (e.g., 'the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours'), even if the final RFC assessment will combine activities (e.g., 'walk/stand, lift/carry, push/pull')."  *Id.*  It also provides that the ALJ must "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record."  *Id.* at

*7.  The Ruling emphasizes that it is "especially important" for ALJs to consider a claimant's capacities separately when deciding if he can perform his past relevant work. *Id.* at *5.

Here, the ALJ found that Plaintiff could "perform sedentary work . . . except he can do no walking on uneven surfaces, needs to alternate between sitting and stand [sic] approximately every hour; can do no kneeling, crouching, or crawling; with only occasional reaching, and no overhead reaching with the left arm." *AR* at 27.  While the ALJ addressed certain aspects of Plaintiff's physical abilities in her RFC determination, she did not describe the maximum amount of walking that he could perform, nor did she describe *separately* his abilities to sit and stand.  She also did not define Plaintiff's ability to push or pull.  Further, the ALJ did not specify in her narrative discussion the evidence upon which she relied in making her RFC determination, nor did she discuss each of the seven strength demands separately or tie the RFC determination to the evidence.  *See id.* 27-29.  Although the ALJ noted that Plaintiff "taught himself how to walk" with his prosthesis, she did not discuss his ability or endurance when standing and walking with the use of his prosthesis.  *See id.*

The Physical Residual Functional Capacity Assessment, dated April 28, 2010, by a state agency medical consultant indicated that Plaintiff could stand or walk for 2 hours in an 8-hour workday and sit for 6 hours in an 8-hour work day.  *AR* at 426.  Yet the Tenth Circuit has held that "[s]uch [checkmark-style] evaluation forms, standing alone, unaccompanied by thorough written reports or persuasive testimony are not substantial evidence."  *Frey v. Bowen,* 816 F.2d 508, 515 (10th Cir. 1987).  Plaintiff testified that he could sit only 30 to 45 minutes, stand only 20 minutes, walk only 15 minutes, and lift

and carry only 5 pounds occasionally.   *AR* at 47, 57.  He also testified that he could

only tolerate his prosthetic device being on for approximately 3 hours.  *Id.* at 51.  The

ALJ presumably discredited this testimony by Plaintiff, though she did not discuss it

directly, as she indicated that Plaintiff's statements concerning the intensity,

persistence, and limiting effects of his symptoms were "not credible to the extent they

are inconsistent with the . . . residual functional capacity assessment."  *Id.* at 29.

Notably, however, the ALJ did not set forth the specific evidence relied upon or closely

and affirmatively link her credibility conclusions to the evidence, rendering her credibility

determination suspect.[2]

   The Commissioner contends that the opinions of Dr. DeCoster, Dr. Sandhu, and

Dr. Legant support the ALJ's RFC finding.  *Doc. 18* at 7.  Dr. DeCoster reported, on

November 19, 2009, that Plaintiff was "able to ambulate with the prosthesis and a cane,

although he leans heavily on the cane."  *AR* at 383.  Dr. Sandhu, a neurologist, reported

on February 18, 2010, that Plaintiff's strength was 5/5 in all extremities and that his gait

was "essentially unremarkable."  *Id.* at 445.  Finally, Dr. Legant reported on November

17, 2011, that Plaintiff had "superb" strength in his hip flexor and extensor and no

singular point of tenderness to the left lower extremity stump.  *Id.* at 462.  Although Dr.

Legant diagnosed Plaintiff with some chronic pain issues, he found no "evidence of

definitive singular etiology for the left lower extremity painful symptoms" and he did not

recommend any surgical approach.  *Id.* at 462-63.   Dr. Legant also reported that at the

time of the examination Plaintiff had a "newer prosthesis" with aching in the left groin

---

[2] An ALJ must "set forth the specific evidence he relies on in evaluating the claimant's
credibility."  *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001).  An ALJ's "findings as to
credibility should be closely and affirmatively linked to substantial evidence and not just a
conclusion in the guise of findings."  *Raymond v. Astrue*, 621 F.3d 1269, 1273 (10th Cir. 2009).

and was scheduled to try out "two different brand new legs" the following month.  *Id.* at 462.

Even considering the opinions of these examining physicians, the Court concludes that no doctor has adequately defined Plaintiff's maximum ability for walking, standing, or sitting, and that, as a result, there is a lack of evidence as to these functions to support the ALJ's RFC determination.  *See Baker v. Barnhart*, 84 Fed. App'x 10, 2003 WL 22905238 (10th Cir. 2003).  A function-by-function analysis is particularly critical here, where the ALJ ultimately concluded that Plaintiff was able to perform past relevant work.  *See* SSR 96-8p, at *5.  As such, the ALJ's failure to adequately evaluate Plaintiff's RFC on a function-by-function basis constitutes error.[3]

A separate but related consideration is the ALJs determination, also part of the *Winfrey* analysis, that Plaintiff could perform his past relevant work as an Assistant Sales Manager.  SSR 96-8p cautions that "a failure to first make a function-by-function assessment of the individual's limitations or restrictions could result in the adjudicator overlooking some of an individual's limitations or restrictions . . . [and] could lead to an incorrect use of an exertional category [e.g., sedentary] to find that the individual is able to do past relevant work as it is generally performed."  SSR 96-8p at *4.  This appears to be precisely what occurred in this case – the ALJ did not perform a complete function-by-function assessment of Plaintiff's ability to sustain the postural positions of sitting, standing, and walking, which were undoubtedly impaired by the above-the-knee amputation of his left leg, and then she relied upon the assigned "sedentary" exertional

---

[3] The weight of authority from the Tenth Circuit, albeit largely in unpublished opinions, has steadfastly insisted upon a specific function-by-function analysis.  *See, e.g., Southard v. Barnhart*, 72 Fed. App'x 782, 784 (10th Cir. 2003) (unpublished); *Alexander v. Barnhart*, 74 Fed. App'x 23, 28 (10th Cir. 2003) (unpublished); *Lawton v. Barnhart*, 121 Fed. App'x 364, 374 (10th Cir. 2005) (unpublished); *Diggdon v. Apfel*, 189 F.3d 477, at *3 (10th Cir. 1999) (unpublished).

category to conclude that Plaintiff could perform his past relevant work as an Assistant Sales Manager.  The error in the ALJ's function-by-function analysis was compounded by her failure to make specific findings as to the physical demands of Plaintiff's past relevant work and her reliance upon the testimony of the Vocational Expert (VE) in determining that Plaintiff could perform his past relevant work.

The ALJ did not include in her Decision any substantive discussion of the demands of Plaintiff's past work as an Assistant Sales Manager.  Instead, she stated in conclusory fashion that "comparing the claimant's residual functional capacity with the physical and mental demands of this work, I find that the claimant is able to perform it as generally performed."  *AR* at 30.  The evidence of record suggests that Plaintiff's past work as an Assistant Sales Manager was not performed at a sedentary exertional level.  *See id.* at 74 (noting as part of the initial disability determination by the state agency that "clmt has past work, however, it is at more than sedentary exertion").  Indeed, Plaintiff's former supervisor, Greg Harris, indicated that in a typical day as an Assistant Sales Manager, Plaintiff walked 80% of the time and stood 15% of the time and that "sitting meant that you weren't working very hard!!!"  *Id.* at 232.  Additionally, Plaintiff estimated that when performing his past work he would walk and stand for 7 hours of each 9.5-hour work day.  *Id.* at 166.  There is little question that Plaintiff cannot perform the job of Assistant Sales Manager as he previously performed the job.  This, however, does not end the inquiry.

When an individual cannot do past relevant work as they actually performed it, the ALJ "must consider whether the individual can do the work as it is generally performed in the national economy."  SSR 96-8p, at *4.  An ALJ may use the testimony

of a VE in determining whether a claimant can perform past relevant work, though the "VE's role in supplying vocational information at step four is much more limited than his role at step five." *Winfrey*, 92 F.3d at 1025. Indeed, the ALJ must make her own findings on the record as to the claimant's ability to perform past relevant work. *Id.*

Here, the VE categorized Plaintiff's Assistant Sales Manager position as job 163.167-018 in the Dictionary of Occupational Titles. *AR* at 62. That position, which is titled "Sales Manager" in the DOT, is at the sedentary exertional level and requires Specific Vocational Preparation ("SVP") at Level 8, or 4 to 10 years. *Id.* SVP is the "amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." *Dikman v. Halter*, 245 F.3d 1182, 1186 n.2 (10th Cir. 2001). Thus, a Level 8 SVP means that it would take a typical worker over 4 years up to and including 10 years to learn the job. In her Decision, the ALJ concluded that "the SVP requirements were satisfied," because the VE testified that Plaintiff's experience in Auto Sales was included in the experience necessary to perform as an Assistant Sales Manager. *AR* at 30.

As a preliminary matter, the Court questions whether the DOT "Sales Manager" job correctly characterized Plaintiff's prior position as an *Assistant* Sales Manager. After all, the job duties of a "Sales Manager" are much more comprehensive and technical than the duties Plaintiff claims to have performed as an Assistant Sales Manager. *Compare* Dictionary of Occupational Titles 163.167-018[4] *with AR* at 166.[5]

---

[4] Some of the many duties of a "Sales Manager," according to the DOT are as follows: managing sales activities, controlling sales program, coordinating sales distribution by establishing territories, quotas, and goals, advising dealers, distributors, and clients concerning sales and advertising techniques, assigning sales territories, analyzing sales statistics to

Significantly, neither the VE nor the ALJ devoted substantive discussion to the comparative duties or demands of a Sales Manager and/or Assistant Sales Manager.

Plaintiff testified that he worked as an Assistant Sales Manager for approximately a year. *AR* at 64. When Plaintiff's representative asked the VE about the discrepancy between the Level 8 SVP and Plaintiff's mere one year as an Assistant Sales Manager, the VE responded, "he'd been a car salesman for, I don't know how many – at least a number of years so, you have to put those two together because it is a promotion within an industry." *Id.* at 65. Although Plaintiff's Work History Report indicates that Plaintiff held three jobs in Auto Sales before he performed the Assistant Sales Manager job, he maintained only one of those Auto Sales jobs for more than a year. *See id.* at 165. Thus, even combining Plaintiff's three prior Auto Sales jobs with one year as an Assistant Sales Manager, Plaintiff did not reach the bottom of the Level 8 range, which required over four years of experience.

Additionally, when Plaintiff's representative asked the VE whether Plaintiff's salary of $17,000 was a salary befitting a successful Sales Manager, the VE admitted that the salary was on the low end and may indicate that he did not perform the job for a full year. *AR* at 67. Greg Harris, who supervised Plaintiff in his role as Assistant Sales Manager, submitted a statement indicating that the salaries for Assistant Sales Managers ranged from $24,000 to $84,000, putting Plaintiff's salary well below the earnings of the least successful Assistant Sales Managers. This suggests that Plaintiff

---

formulate policy and to assist the promotion of sales, reviewing market analyses, developing sales campaigns, and representing company at trade association meetings. DOT 163.167-018.

[5] Plaintiff described his Assistant Sales Manager job as follows: "Was responsible for training new and present employees in new car product knowledge. Reported daily tracking numbers of each sales person to the GSM. Keep a team of 8 to 10 employees. Showing them how to keep every person they talk to glad to know you , in and away from work." *AR* at 166.

was either a poorly-performing Assistant Sales Manager or that he held the position for well under a year.  Either way, it undermines the VE's conclusion that Plaintiff could perform the job of Sales Manager as the job is generally performed in the national economy.

Finally, if the Auto Sales jobs held by Plaintiff *after* his Assistant Sales Manager position are included, Plaintiff's experience technically meets the requisite years for Level 8 SVP.  However, Plaintiff's experience in Auto Sales is notably sporadic and inconsistent.  The fact that only two of Plaintiff's six Auto Sales jobs lasted for more than one year simply does not bode well for the experience he obtained in satisfaction of the Level 8 SVP requirements for a Sales Manager position.

While an ALJ may rely upon information supplied by a VE at Step Four, "the ALJ [herself] must make the required findings on the record, including [her] own evaluation of the claimant's ability to perform his past relevant work."  *Winfrey*, 92 F.3d at 1025. Here, the ALJ abdicated her fact-finding and evaluation responsibilities to the VE as to Plaintiff's ability to perform past relevant work.  Further, there is a lack of substantial evidence in the current record to support a finding that Plaintiff could perform the job as Assistant Sales Manager either as he previously performed the job or as it is generally performed in the national economy.

In sum, the ALJ's Step-Four analysis was flawed in several respects.  In the first prong of the *Winfrey* analysis, the ALJ failed to perform a proper function-by-function analysis and her RFC determination was not supported by substantial evidence.  In the second and third prongs, she failed to make the required findings as to the demands of Plaintiff's past relevant work and as to Plaintiff's ability to perform such work as it is

generally performed.   Because the ALJ's determinations were not supported by

substantial evidence, the Court must reverse and remand for further proceedings.

**IV.     Conclusion**

For all of these reasons, the Court finds that remand is warranted.  Because the

Court recommends remand on the bases discussed herein, it need not address

Plaintiff's remaining claims of error.  *Wilson v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir.

2003)

Wherefore,

**IT IS HEREBY RECOMMENDED** that Plaintiff's motion to remand *(Doc. 17)* be

granted.

---

**THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a

copy of these Proposed Findings and Recommended Disposition, they may file written

objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1).

**A party must file any objections with the Clerk of the District Court within the**

**fourteen-day period if that party wants to have appellate review of the proposed**

**findings and recommended disposition.  If no objections are filed, no appellate**

**review will be allowed.**

---

_____

UNITED STATES CHIEF MAGISTRATE JUDGE